**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UBS FINANCIAL SERVICES INC., and
ANDREW BURISH,

               Petitioners,

    v.

DENNIS HANSEN, LESLIE HANSEN,
TYLER HANSEN, NOELLE HANSEN,
BRADLEY NELSON, JORDAN NELSON,
LINDSEY VALENTINI, NICHOLAS
VALENTINI,
and MARK KRAMER,

               Respondents.

**Civil Action No.** _4:25-cv-120_

**Oral Argument Requested**

**Petition and Motion to Vacate Arbitration Award**

**Introduction**

Petitioners UBS Financial Services Inc., and Andrew Burish (collectively, "Petitioners") bring this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*

Petitioners move to vacate the arbitration award entered on February 28, 2025, against Petitioners and in favor of Respondents Dennis Hansen, Leslie Hansen, Tyler Hansen, Noelle Hansen, Bradley Nelson, Jordan Nelson, Lindsey Valentini, Nicholas Valentini, and Mark Kramer (collectively, "Respondents") in an arbitration administered by the Financial Industry Regulatory Authority ("FINRA"), captioned *Hansen et al., v. UBS Fin. Servs. Inc. et al.*, FINRA Case No. 21-00488. *See* 9 U.S.C. §§ 6, 10. Attached to these materials are: (1) a memorandum of law in support of Petitioners' motion to vacate; and (2) exhibits in support.

I.    **Parties**

1.    Petitioner UBS Financial Services Inc. ("UBS") is a corporation organized and existing under the laws of Delaware with its principal places of business in New York, New York, and Weehawken, New Jersey.

2.    Petitioner Andrew Burish is a financial advisor, registered investment advisor, and Managing Director in UBS's Madison, Wisconsin office. Burish is a resident of Middleton, Wisconsin.

3.    Respondent Dennis Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

4.    Respondent Leslie Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

5.    Respondent Tyler Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

6.     Respondent Noelle Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

7.     Respondent Bradley Nelson is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

8.     Respondent Jordan Nelson is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

9.     Respondent Lindsey Valentini is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

10.     Respondent Nicholas Valentini is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

11.     Respondent Mark Kramer is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

12.     All Respondents brought claims against UBS and Burish in the Arbitration.

**II.     Jurisdiction and Venue**

13.     "A federal court may entertain an action brought under the FAA only if the action has an independent jurisdictional basis." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022) (quotations omitted).

14.     To determine whether a court has independent subject-matter jurisdiction for an application to vacate under the FAA, 9 U.S.C. § 10, courts look to the application itself, not the underlying controversy that the parties arbitrated, *Badgerow*, 596 U.S. at 9–10.

15.     Here, this Court has diversity jurisdiction under 28 U.S.C. § 1332 for all of Petitioners' claims.  Section 1332 is satisfied when the amount in controversy in the civil action "exceeds the sum or value of $75,000, exclusive of interests and costs," and when complete diversity exists among the parties.  *Id.*; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978).

16.     Here, the amount-in-controversy requirement is satisfied.  Petitioners seek to vacate the arbitration award, in which the arbitration panel found UBS liable for compensatory damages of \$23,059,521.90 and for punitive damages of \$69,178,565.70, and found Burish liable for compensatory damages of \$2,562,169.10 and punitive damages of \$500,000.

17.     The requirement of complete diversity is also satisfied.  Petitioners are residents of, headquartered, or incorporated in Wisconsin, New York, New Jersey, and Delaware.  Respondents are all residents of Iowa.  No Petitioner is a resident of the same state as any Respondent.

18.     Venue is proper in this Court pursuant to 9 U.S.C. § 10(a) and 28 U.S.C. § 1391(b)(2).  The FAA's venue provision permits the federal court "in and for the district wherein the award was made" to enter an order vacating an arbitration award.  9 U.S.C. § 10(a).  The general venue provision allows civil actions to be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

19.     Venue is proper in the Central Division of the Southern District of Iowa.  The Arbitration hearings took place—and the arbitration award was issued—in Des Moines, Iowa.

## III.   Background

20.     Petitioners are required to arbitrate customer disputes before FINRA arbitration panels (at the customers' election).  Ex. I (FINRA Rules) 12200.  In addition, Petitioners and Respondents had separate agreements requiring them to arbitrate their disputes.

21.     Respondents' and Petitioners' agreements to arbitrate their dispute provided that the arbitration would "be governed by the rules of the organization convening the panel" and that "[t]he arbitrators shall resolve any controversy in accordance with applicable law."  *E.g.*, Ex. J UBS_008250.

22.     FINRA's rules similarly provided that the arbitrator's award would be governed by applicable law.  *See* FINRA Rule 12904(a) ("All awards shall be in writing and signed by a

majority of the arbitrators or *as required by applicable law*.") (emphasis added); FINRA Rule 12904(b) ("*Unless the applicable law directs otherwise*, all awards rendered under the Code are final and not subject to review or appeal.") (emphasis added).

23.    In 2022, Respondents initiated this arbitration against Petitioners, bringing four claims alleging: (1) breach of fiduciary duty; (2) violations of FINRA suitability rules governing investment advice; (3) negligent supervision; and (4) fraud.  Respondents sought relief including compensatory and punitive damages.

24.    According to Respondents, Burish gave them unsuitable and one-sided investment advice concerning a strategy to short-sell Tesla stock from 2017 into 2020.  Respondents also alleged that Burish violated the law and UBS policy by sending them unsuitable investment advice via text message and then deleting the text messages.  Respondents further alleged that Burish fraudulently led them to believe he was also short-selling Tesla stock even after he was no longer invested in the strategy.

25.    As for UBS, Respondents alleged that UBS failed to supervise Burish or prevent them from incurring heavy losses resulting from Burish's advice.

26.    After a trial, the arbitration panel entered an award in Respondents' favor.  The panel found UBS liable for compensatory damages of $23,059,521.90 and Burish liable for compensatory damages of $2,562,169.10.  Ex M. ("Award") 3–4.

27.    The panel further awarded Respondents $69,178,565.70 in punitive damages from UBS and $500,000 in punitive damages from Burish.  Award 3–4.  In doing so, the panel cited Iowa Code § 668A.1 as authority for the punitive award.  *Id.*

### Grounds For Relief

## I.    First Ground For Relief: Excessive Punitive Damages (UBS Only)

28.    Petitioners incorporate by reference the allegations of the preceding paragraphs.

29.    The U.S. Constitution, Iowa law, and the parties' arbitration agreements each forbid excessive and irrational awards of punitive damages.  *See, e.g.*, *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1 (Iowa 2020).

30.    The panel's award of nearly $70 million in punitive damages was grossly excessive, irrational, and contrary to well-defined and dominant public policy.

31.    The maximum permissible punitive award against UBS would have been $23,059,521.90 (a 1:1 ratio to compensatory damages).

32.    Accordingly, the panel exceeded its powers and violated well-defined and dominant public policy by imposing a grossly excessive punitive award.  9 U.S.C. §§ 10(a)(4), 11; *Paine-Webber, Inc. v. Agron*, 49 F.3d 347, 350 (8th Cir. 1995).

## II.    Second Ground For Relief: Failure To Comply With ICA § 668A.1 (UBS And Burish)

33.    Petitioners incorporate by reference the allegations of the preceding paragraphs.

34.    Section 668A.1 provides that an award for punitive damages "shall not be made" unless the factfinder indicates that "the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another."  ICA § 668A.1(1)(a).

35.    Here, though the panel cited Section 668A.1 as its authority to render the award, the panel's award does not indicate whether Petitioners' conduct constituted willful or wanton disregard for the rights or safety of another.

36.    Section 668A.1 further provides that an award "shall not be made" unless the factfinder indicates "[w]hether the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived."  ICA § 668A.1(1)(b).

37.    Here, though the panel cited Section 668A.1 as its authority to render the award, the panel's award does not indicate whether Petitioners' conduct was directed specifically at Respondents.

38.    If the factfinder does not indicate that the conduct justifying punitive damages was directed "specifically at the claimant," at least 75% of the award must go to "a civil reparations trust fund administered by the state court administrator."  ICA § 668A.1(2)(b).

39.    Here, despite these requirements, the panel awarded Respondents nearly $70 million in punitive damages and allocated 0% of the award to the civil reparations trust fund.

40.    Accordingly, the panel exceeded its powers and so imperfectly executed them that a mutual, final, and definite award upon the matter submitted was not made.

41.    The award also violated well-defined and dominant public policy by imposing a punitive award without fulfilling the threshold requirements for such an award under punitive damages law or allocating a portion of the award to the civil reparations trust fund.  9 U.S.C. § 10(a)(4); *PaineWebber*, 49 F.3d at 350.

### Conclusion And Prayer For Relief

42.    For these reasons, Petitioners respectfully request entry of an order and judgment:

a.    Vacating the award;

b.    Alternatively, reducing the punitive component of the award against UBS to $23,059,521.90; and

c.    Granting such other and further relief as this Court deems just and proper.

### Local Rule 7(c) Statement Concerning Oral Argument

43.    Petitioners request oral argument pursuant to Local Rule 7(c).  This case involves important legal issues concerning an arbitral award of more than $90 million.  Those legal issues include, among others, the interaction of the FAA's standards for vacatur with Supreme Court and Iowa precedent concerning punitive damages, the parties' agreements to arbitrate, and well-defined and dominant federal and Iowa public policy.  For these reasons, good cause exists to schedule oral argument on Petitioners' motion to vacate the award after the motion is fully briefed.

Dated:  March 31, 2025

/s/  Tyler R. Smith
Tyler R. Smith  AT0013123
Thomas J. Joensen  AT0003868
*Lead Counsel*
GORDON REES LLP
666 Grand Avenue, Suite 1701
Des Moines, IA 50309
(515) 204-2844
trsmith@grsm.com
tjoensen@grsm.com

Respectfully submitted,

/s/ Matt Gregory
Thomas G. Hungar*
Matt Gregory*
Emma Eisendrath*
Audrey Payne*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W., Washington, D.C. 20036
(202) 955-8500
mgregory@gibsondunn.com

Marshall R. King*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166
(212) 351-4000
mking@gibsondunn.com

*Motion for admission pro hac vice forthcoming*

*Attorneys for Petitioners UBS Financial Services Inc. and Andrew Burish*