IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **UBS FINANCIAL SERVICES INC. and ANDREW BURISH**,<br><br>**Plaintiffs**,<br><br>v.<br><br>**DENNIS HANSEN, LESLIE HANSEN, TYLER HANSEN, NOELLE HANSEN, BRADLEY NELSON, JORDAN NELSON, LINDSEY VALENTINI, NICHOLAS VALENTINI, AND MARK KRAMER,**<br><br>**Defendants**. | Case No. 4:25-cv-00120-SMR-HCA<br><br>**DEFENDANTS' ANSWER AND COUNTERCLAIM** |

Defendants Dennis Hansen, Leslie Hansen, Tyler Hansen, Noelle Hansen, Bradley Nelson, Jordan Nelson, Lindsey Valentini, Nicholas Valentini, (the "Hansen Family") and Mark Kramer ("Kramer") (collectively "Defendants" or "Claimants") submit their Answer and Counterclaim as follows:

**ANSWER**

Petitioners UBS Financial Services Inc., and Andrew Burish (collectively, "Petitioners") bring this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*

Petitioners move to vacate the arbitration award entered on February 28, 2025, against Petitioners and in favor of Respondents Dennis Hansen, Leslie Hansen, Tyler Hansen, Noelle Hansen, Bradley Nelson, Jordan Nelson, Lindsey Valentini, Nicholas Valentini, and Mark Kramer (collectively, "Respondents") in an arbitration administered by the Financial Industry

1

Regulatory Authority ("FINRA"), captioned *Hansen et al., v. UBS Fin. Servs. Inc. et al.*, FINRA Case No. 21- 00488. *See* 9 U.S.C. §§ 6, 10. Attached to these materials are: (1) a memorandum of law in support of Petitioners' motion to vacate; and (2) exhibits in support.

**ANSWER: Defendants admit that Plaintiffs seek to vacate the arbitration award and deny that Plaintiffs are entitled to the relief sought.**

**I.    Parties**

1.     Petitioner UBS Financial Services Inc. ("UBS") is a corporation organized and existing under the laws of Delaware with its principal places of business in New York, New York, and Weehawken, New Jersey.

**ANSWER: Admitted.**

2.     Petitioner Andrew Burish is a financial advisor, registered investment advisor, and Managing Director in UBS's Madison, Wisconsin office. Burish is a resident of Middleton, Wisconsin.

**ANSWER: Admitted.**

3.     Respondent Dennis Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Dennis Hansen is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended cannot be transferred from UBS.**

4.     Respondent Leslie Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Leslie Hansen is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish**

recommended cannot be transferred from UBS.

5. Respondent Tyler Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Tyler Hansen is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended cannot be transferred from UBS.**

6. Respondent Noelle Hansen is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Noelle Hansen is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended cannot be transferred from UBS.**

7. Respondent Bradley Nelson is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted.**

8. Respondent Jordan Nelson is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted.**

9. Respondent Lindsey Valentini is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Lindsey Valentini is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended cannot be transferred from UBS.**

10. Respondent Nicholas Valentini is a former customer of UBS and Burish and a

res- ident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Nicholas Valentini is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended could not be transferred from UBS.**

11.     Respondent Mark Kramer is a former customer of UBS and Burish and a resident of New Hampton, Iowa.

**ANSWER: Admitted in part and denied in part. Mark Kramer is a resident of New Hampton, Iowa, and was a customer of UBS and Burish. Certain investments Burish recommended could not be transferred from UBS.**

12.     All Respondents brought claims against UBS and Burish in the Arbitration.

**ANSWER: Admitted.**

**II.     Jurisdiction and Venue**

13.     "A federal court may entertain an action brought under the FAA only if the action has an independent jurisdictional basis." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022) (quotations omitted).

**ANSWER: Paragraph 13 is a conclusion of law to which no response is required. To the extent a responses is required Defendants admit this court has subject matter jurisdiction.**

14.     To determine whether a court has independent subject-matter jurisdiction for an application to vacate under the FAA, 9 U.S.C. § 10, courts look to the application itself, not the underlying controversy that the parties arbitrated, *Badgerow*, 596 U.S. at 9–10.

**ANSWER: Paragraph 14 is a conclusion of law to which no response is required. To the extent a responses is required Defendants admit this court has subject matter**

**jurisdiction.**

15. Here, this Court has diversity jurisdiction under 28 U.S.C. § 1332 for all of Petitioners' claims. Section 1332 is satisfied when the amount in controversy in the civil action "exceeds the sum or value of $75,000, exclusive of interests and costs," and when complete diversity exists among the parties. *Id.*; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978).

**ANSWER: Admitted.**

16. Here, the amount-in-controversy requirement is satisfied. Petitioners seek to vacate the arbitration award, in which the arbitration panel found UBS liable for compensatory damages of $23,059,521.90 and for punitive damages of $69,178,565.70, and found Burish liable for compensatory damages of $2,562,169.10 and punitive damages of $500,000.

**ANSWER: Admitted.**

17. The requirement of complete diversity is also satisfied. Petitioners are residents of, headquartered, or incorporated in Wisconsin, New York, New Jersey, and Delaware. Respondents are all residents of Iowa. No Petitioner is a resident of the same state as any Respondent.

**ANSWER: Admitted.**

18. Venue is proper in this Court pursuant to 9 U.S.C. § 10(a) and 28 U.S.C. § 1391(b)(2). The FAA's venue provision permits the federal court "in and for the district wherein the award was made" to enter an order vacating an arbitration award. 9 U.S.C. § 10(a). The general venue provision allows civil actions to be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28

U.S.C. § 1391(b)(2).

**ANSWER: Admitted.**

19. Venue is proper in the Central Division of the Southern District of Iowa. The Arbitration hearings took place—and the arbitration award was issued—in Des Moines, Iowa.

**ANSWER: Admitted in part and denied in part. Admitted that venue is proper in Central Division of the Southern District of Iowa consistent with FINRA rules incorporated into the arbitration contract. May 15-26, 2023, sessions occurred in person in Des Moines, Iowa. The remainder of sessions occurred elsewhere, via Zoom.**

### III. Background

20. Petitioners are required to arbitrate customer disputes before FINRA arbitration panels (at the customers' election). Ex. I (FINRA Rules) 12200. In addition, Petitioners and Respondents had separate agreements requiring them to arbitrate their disputes.

**ANSWER: Admitted that FINRA arbitration was mandatory pursuant to UBS's form customer agreements Defendants signed to be become UBS customers, admitted that FINRA Rule 12200 requires arbitration required by a written agreement or requested by the customers, and denied that arbitration was at customer election here.**

21. Respondents' and Petitioners' agreements to arbitrate their dispute provided that the arbitration would "be governed by the rules of the organization convening the panel" and that "[t]he arbitrators shall resolve any controversy in accordance with applicable law." *E.g.*, Ex. J UBS_008250.

**ANSWER: Admitted that the cited language is drawn from the referenced exhibits**

**Paragraph 21 is an incomplete statement of the arbitration contracts, the "applicable law" referenced, and the FINRA rules incorporated into the Agreement. The referenced documents speak for themselves, and Defendants admit all allegations consistent with them and deny inconsistent characterizations.**

22. FINRA's rules similarly provided that the arbitrator's award would be governed by applicable law. *See* FINRA Rule 12904(a) ("All awards shall be in writing and signed by a majority of the arbitrators or *as required by applicable law*.") (emphasis added); FINRA Rule 12904(b) ("*Unless the applicable law directs otherwise*, all awards rendered under the Code are final and not subject to review or appeal.") (emphasis added).

**ANSWER: Paragraph 22 is an incomplete statement of the arbitration contracts, the "applicable law" referenced, and the FINRA rules incorporated into the Agreement. The referenced documents speak for themselves, and Defendants admit all allegations consistent with them and deny inconsistent characterizations.**

23. In 2022, Respondents initiated this arbitration against Petitioners, bringing four claims alleging: (1) breach of fiduciary duty; (2) violations of FINRA suitability rules governing investment advice; (3) negligent supervision; and (4) fraud. Respondents sought relief including compensatory and punitive damages.

**ANSWER: Admitted in part and denied in part. Defendants filed claims of breach of fiduciary duty, violation of FINRA suitability rules, and failure to supervise/negligent supervision in February 2021. Upon learning that Plaintiffs' fraudulently failed to disclose that Burish had stopped short selling alongside Defendants for the first time in discovery, Defendants filed an Amended Statement of Claims in April 2022 that added a count for fraud. Admitted that Defendants sought compensatory and punitive damages in 2021 and**

**2022.**

24. According to Respondents, Burish gave them unsuitable and one-sided investment advice concerning a strategy to short-sell Tesla stock from 2017 into 2020. Respondents also alleged that Burish violated the law and UBS policy by sending them unsuitable investment advice via text message and then deleting the text messages. Respondents further alleged that Burish fraudulently led them to believe he was also short-selling Tesla stock even after he was no longer invested in the strategy.

**ANSWER: Paragraph 24 is an incomplete statement of the established claims against Burish for breaches of professional duties of care, breaches of fiduciary duty, and fraud. The record evidence speak for itself.** *See* **5/15/2023-12/11/2024 Hr. Tr.; 5/15/2023-12/11/2024, Hearing Recordings; Claimants' Appendix of Admitted Exhibits, Claimants' Post-Hearing Brief, attached hereto and incorporated by reference (collectively, the "Complete Record"). Defendants admit Paragraph 24 to the extent consistent with the Complete Record and deny inconsistent characterizations.**

25. As for UBS, Respondents alleged that UBS failed to supervise Burish or prevent them from incurring heavy losses resulting from Burish's advice.

**ANSWER: Paragraph 25 is an incomplete statement of the established claims against UBS for breaches of professional duties of care, breaches of fiduciary duty, and fraud. The record evidence speak for itself.** *See* **5/15/2023-12/11/2024 Hr. Tr.; 5/15/2023-12/11/2024, Hearing Recordings; Claimants' Appendix of Admitted Exhibits, Claimants' Post-Hearing Brief. Defendants admit Paragraph 25 to the extent consistent with the Complete Record, and deny inconsistent characterizations.**

26. After a trial, the arbitration panel entered an award in Respondents' favor. The

panel found UBS liable for compensatory damages of $23,059,521.90 and Burish liable for compensatory damages of $2,562,169.10. Ex M. ("Award") 3–4.

**ANSWER: Admitted.**

27. The panel further awarded Respondents $69,178,565.70 in punitive damages from UBS and $500,000 in punitive damages from Burish. Award 3–4. In doing so, the panel cited Iowa Code § 668A.1 as authority for the punitive award. *Id.*

**ANSWER: Paragraph 27 is an incomplete statement of the record. The panel's Award cited the Complete Record ("[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions…"), the Iowa Civil Jury Instructions, Iowa Code § 668A.1, and *McGough v. Gabus*, 526 N.W.2d 328,334 (Iowa 1995)(quoting *Fell v. Kewanee Farm Equipment Co.*, 457 N.W.2d 911,919 Iowa 1990) as authority for the punitive award. Defendants admit Paragraph 27 to the extent consistent with the authority cited for the punitive award, and deny inconsistent characterizations. Defendants further admit that the panel awarded a total of $69,178,565.70 in punitive damages from UBS and $500,000 in punitive damages from Burish among the nine Defendants.**

## IV. Grounds For Relief

### I. First Ground For Relief: Excessive Punitive Damages (UBS Only)

28. Petitioners incorporate by reference the allegations of the preceding paragraphs.

**ANSWER: Defendants incorporate by reference their Answers to the preceding paragraphs.**

29. The U.S. Constitution, Iowa law, and the parties' arbitration agreements each

forbid excessive and irrational awards of punitive damages. *See, e.g.*, *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1 (Iowa 2020).

**ANSWER: Paragraph 29 is a legal conclusion to which no response is required. To the extent a response is required, UBS waived this argument and, further, denied that the Award, Doc. 1-14, was excessive or irrational, denied that the U.S. Constitution, Iowa law, and the parties' arbitration agreements limit the FINRA panel's authority to award punitive damages.**

30. The panel's award of nearly $70 million in punitive damages was grossly excessive, irrational, and contrary to well-defined and dominant public policy.

**ANSWER: Denied.**

31. The maximum permissible punitive award against UBS would have been $23,059,521.90 (a 1:1 ratio to compensatory damages).

**ANSWER: Denied.**

32. Accordingly, the panel exceeded its powers and violated well-defined and dominant public policy by imposing a grossly excessive punitive award. 9 U.S.C. §§ 10(a)(4), 11; *PaineWebber, Inc. v. Agron*, 49 F.3d 347, 350 (8th Cir. 1995).

**ANSWER: Denied.**

**II. Second Ground For Relief: Failure To Comply With ICA § 668A.1 (UBS And Burish)**

33. Petitioners incorporate by reference the allegations of the preceding paragraphs.

**ANSWER: Defendants incorporate by reference their Answers to the preceding paragraphs.**

34. Section 668A.1 provides that an award for punitive damages "shall not be made" unless the factfinder indicates that "the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." ICA § 668A.1(1)(a).

**ANSWER: Paragraph 34 is an incomplete and inaccurate statement Iowa Code § 668A.1(1)(a). Iowa Code § 668A.1 speaks for itself and Defendants deny characterizations in Paragraph 34 inconsistent with the statutory text, including but not limited to the implication that it extends to factfinders who are abritrators.**

35. Here, though the panel cited Section 668A.1 as its authority to render the award, the panel's award does not indicate whether Petitioners' conduct constituted willful or wanton disregard for the rights or safety of another.

**ANSWER: Admitted in part and denied in part. Admitted that the panel's Award cited the Complete Record ("[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions…"), the Iowa Civil Jury Instructions, Iowa Code § 668A.1, and *McGough v. Gabus*, 526 N.W.2d 328,334 (Iowa 1995)(quoting *Fell v. Kewanee Farm Equipment Co.*, 457 N.W.2d 911,919 Iowa 1990) as authority for the punitive award. Denied that the panel's award does not indicate whether Plaintiffs' conduct constituted willful or wanton disregard for the rights or safety of another. Answering further, Respondents waived this second ground for relief by failing to raise the issue to the panel.**

36. Section 668A.1 further provides that an award "shall not be made" unless the factfinder indicates "[w]hether the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived." ICA § 668A.1(1)(b).

11

**ANSWER: Paragraph 36 is an incomplete and inaccurate statement Iowa Code § 668A.1. Iowa Code § 668A.1 speaks for itself and Defendants deny characterizations in Paragraph 36 inconsistent with the statutory text, including but not limited to the implication that it extends to factfinders who are arbitrators.**

37. Here, though the panel cited Section 668A.1 as its authority to render the award, the panel's award does not indicate whether Petitioners' conduct was directed specifically at Respondents.

**ANSWER: Admitted in part and denied in part. Admitted that the Panel cited section 668A.1 in addition to other record and legal authority, but denied that the award does not indicate whether Plaintiffs' conduct was directed specifically at Defendants.**

38. If the factfinder does not indicate that the conduct justifying punitive damages was directed "specifically at the claimant," at least 75% of the award must go to "a civil reparations trust fund administered by the state court administrator." ICA § 668A.1(2)(b).

**ANSWER: Denied.**

39. Here, despite these requirements, the panel awarded Respondents nearly $70 million in punitive damages and allocated 0% of the award to the civil reparations trust fund.

**ANSWER: Denied that Iowa Code § 668A.1 imposed any requirements in this arbitration and admitted that the Panel awarded Defendants, collectively, 100% of the $69,678,565.70 in punitive damages.**

40. Accordingly, the panel exceeded its powers and so imperfectly executed them that a mutual, final, and definite award upon the matter submitted was not made.

**ANSWER: Denied.**

41. The award also violated well-defined and dominant public policy by imposing

a punitive award without fulfilling the threshold requirements for such an award under punitive damages law or allocating a portion of the award to the civil reparations trust fund. 9 U.S.C. § 10(a)(4); *PaineWebber*, 49 F.3d at 350.

**ANSWER: Denied.**

V.  **Conclusion And Prayer For Relief**

42.  For these reasons, Petitioners respectfully request entry of an order and judgment:

a.  Vacating the award;

b.  Alternatively, reducing the punitive component of the award against UBS to $23,059,521.90; and

c.  Granting such other and further relief as this Court deems just and proper.

**ANSWER: Paragraph 42 is a request for relief to which no response is required. To the extent a response is required, Defendants request that this Court confirm the Award with interest as detailed in Defendants' request for relief herein.**

VI.  **Local Rule 7(c) Statement Concerning Oral Argument**

43.  Petitioners request oral argument pursuant to Local Rule 7(c). This case involves important legal issues concerning an arbitral award of more than $90 million. Those legal issues include, among others, the interaction of the FAA's standards for vacatur with Supreme Court and Iowa precedent concerning punitive damages, the parties' agreements to arbitrate, and well-defined and dominant federal and Iowa public policy. For these reasons, good cause exists to schedule oral argument on Petitioners' motion to vacate the award after the motion is fully briefed.

**ANSWER: Due to the multiple, independent ground to reject Plaintiffs' Motion to**

**Vacate and to confirm the Award, oral argument is unnecessary, but Defendants ultimately defer to the Court whether oral argument will be helpful.**

WHEREFORE Defendants Dennis Hansen, Leslie Hansen, Tyler Hansen, Noelle Hansen, Jordan Nelson, Bradley Nelson, Lindsey Valentini, Nicholas Valentini, and Mark Kramer respectfully request that this Court enter an Order:

(a) Denying Plaintiffs' Motion to Vacate;

(b) Granting Defendants' Motion to Confirm the Award;

(c) Entering judgment in favor of the Hansen Family and Kramer and against Plaintiffs UBS Financial Services, Inc., ("UBS") and Andrew Burish ("Burish"), as follows:

    (i) $68,133,438.00 against UBS and $1,992,595.50 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Dennis and Leslie Hansen;

    (ii) $3,171,484.80 against UBS and $188,096.80 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Tyler and Noelle Hansen;

    (iii) $1,076,256.00 against UBS and $129,896.00 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Jordan and Bradley Nelson;

    (iv) $3,204,864.00 against UBS and $189,024.00 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Lindsey and Nicholas Valentini;

    (v) $16,652,044.80 against UBS and $562,556.80 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Mark Kramer;

(d) Granting all other relief that is fair and just.

### COUNTERCLAIM TO CONFIRM ARBITRATION AWARD

Defendants/Counterclaim-Plaintiffs Dennis Hansen, Leslie Hansen, Tyler Hansen, Noelle Hansen, Bradley Nelson, Jordan Nelson, Lindsey Valentini, Nicholas Valentini, (the "Hansen Family") and Mark Kramer ("Kramer") petition this court to confirm the arbitration

award against Plaintiffs/Counterclaim-Defendants UBS Financial Services Inc., and Andrew Burish pursuant to 9 U.S.C. § 9 as follows:

**Parties**

1. Plaintiff/Counterclaim-Defendant UBS Financial Services Inc. ("UBS") is a corporation organized and existing under the laws of Delaware with its principal places of business in New York, New York, and Weehawken, New Jersey.

2. Plaintiff/Counterclaim-Defendant Andrew Burish is a resident of Middleton, Wisconsin.

3. Defendant/Counterclaim-Plaintiff Dennis Hansen is a resident of New Hampton, Iowa.

4. Defendant/Counterclaim-Plaintiff Leslie Hansen is a resident of New Hampton, Iowa.

5. Defendant/Counterclaim-Plaintiff Tyler Hansen is a resident of New Hampton, Iowa.

6. Defendant/Counterclaim-Plaintiff Noelle Hansen is a resident of New Hampton, Iowa.

7. Defendant/Counterclaim-Plaintiff Jordan Nelson is a resident of New Hampton, Iowa.

8. Defendant/Counterclaim-Plaintiff Bradley Nelson is a resident of New Hampton, Iowa.

9. Defendant/Counterclaim-Plaintiff Lindsey Valentini is a resident of New Hampton, Iowa.

10. Defendant/Counterclaim-Plaintiff Nicholas Valentini is a resident of New

Hampton, Iowa.

11. Defendant/Counterclaim-Plaintiff Mark Kramer is a resident of New Hampton, Iowa.

## Jurisdiction

12. This court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

13. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because the acts giving rise to the Petition occurred in Des Moines, Iowa.

## The FINRA Arbitration Award Should be Confirmed

14. On February 28, 2025, a Financial Industry Regulatory Authority ("FINRA") panel of arbitrators entered an award in favor of the Hansen family and Kramer and against UBS and Burish. Doc. 1-14 (the "Award"), which is incorporated by reference.

15. The Award was entered following 39 days of evidence and argument at the arbitration hearing after "considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions". *See* Defendants' Ex. A, 5/15/2023 through 12/11/2024 Hr. Tr.; Defendants' Ex. B, 5/15/2023 through 12/11/2024 Recordings; Defendants' Ex. C, Claimants' Appendix of Admitted Exhibits; Doc. 1-2, First Amended Statement of Claims; Doc. 1-3, Claimants' Post-Hearing Brief; Doc. 1-13, Respondents' Post-Hearing Brief (each of which is incorporated by reference herein).

16. UBS and Burish filed their Petition and Motion to Vacate Arbitration Award on March 31, 2025. Doc. 1.

17. UBS and Burish's Motion to Vacate Arbitration Award should be denied for all of the reasons set forth in Defendants' Brief in Resistance to Plaintiffs' Motion to Vacate,

which is being submitted contemporaneously herewith and is incorporated by reference.

18.     The Hansen Family and Kramer respectfully request that this Court confirm the Award pursuant to 9 U.S.C. § 9.

19.     Arbitration contracts between UBS and Burish and the Hansen family and Kramer incorporate FINRA's rules. Doc. 1-11 at 31 ("The rules of the arbitration forum in which the claim is filed, and any amendment to them, shall be incorporated into this Agreement."); Doc. 1-15 at 10; Doc. 1-16 at 20; Doc. 1-17 at 25; Doc. 1-18 at 24; Doc. 1-19 at 32; Doc. 1-20 at 27.

20.     Pursuant to FINRA's rules: "An award shall bear interest from the date of the award . . . [i]f the award is the subject of a motion to vacate which is denied . . . at the legal rate, if any then prevail in the state where the award was rendered." Doc. 1-10 at 100, FINRA Rule 12904(j).

21.     The applicable post-judgment interest rate running from February 28, 2025 is 6.13%. *See* Decl. of Nicholas Petersen; *see also* Defendants' Exhibit E, Federal Reserve Rates; Iowa Code §§ 535.3(1) and 668.13; *United Mexican States v. Nelson*, No. 22-CV-4047-CJW-KEM, 2023 WL 2616095, at *10 (N.D. Iowa Mar. 23, 2023) (confirming arbitration award, granting post-judgment interest, and drawing on interest rate from the day immediately prior to the date of the award: "On June 4, 2020—<u>one day prior to the date of the award</u>—the one-year treasury constant maturity published by the federal reserve was 0.17%.") (emphasis added).

22.     Defendants further request an award of attorneys' fees and costs because Plaintiffs' two central objections—alleged excessiveness of the punitive damage ratio and Iowa Code § 668A.1(1)(b)—are arguments they had fair opportunity to raise to the arbitration

panel, failed to do so, and they now know results in waiver of those arguments in a motion to vacate. *See* Defendants' Ex. D at 8, *Rudwall v. UBS Financial Services Inc.,* No. 1:24-cv-07627, Doc. 10 at 8, UBS's Response in Opp. to Motion to Vacate Arbitration Award and in Support of UBS' Pet. to Confirm, (N.D. Ill.) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award."); *Glass-Inspiration GMBH v. McGrath, Inc.*, No. 24-CV-3315 (LMP/DLM), 2025 WL 303946, at *4 (D. Minn. Jan. 27, 2025) (quoting *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. United Farm Tools, Inc.*, 762 F.2d 76, 77 (8th Cir. 1985)) ("An unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees.")

WHEREFORE, Defendants respectfully request that this Court enter an Order:

(a) Denying Plaintiffs' Motion to Vacate;

(b) Granting Defendants' Motion to Confirm the Award;

(c) Entering judgment in favor of the Hansen Family and Kramer and against Plaintiffs UBS Financial Services, Inc., ("UBS") and Andrew Burish ("Burish), as follows:

> (i) $68,133,438.00 against UBS and $1,992,595.50 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Dennis and Leslie Hansen;
>
> (ii) $3,171,484.80 against UBS and $188,096.80 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Tyler and Noelle Hansen;
>
> (iii) $1,076,256.00 against UBS and $129,896.00 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Jordan and Bradley Nelson;
>
> (iv) $3,204,864.00 against UBS and $189,024.00 against Burish plus post judgment interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Lindsey and Nicholas Valentini;
>
> (v) $16,652,044.80 against UBS and $562,556.80 against Burish plus post judgment

interest at a rate of 6.13% from February 28, 2025, until the date paid in favor of Mark Kramer;

(d) Awarding Defendants their attorneys' fees and costs and offering the opportunity to submit a motion pursuant to Fed. R. Civ. P. 54 detailing reasonable fees and costs.

(e) Granting all other relief that is fair and just.

Dated: June 4, 2025

        SIMMONS PERRINE MOYER BERGMAN PLC

        By: /s/ Stephen J. Holtman
        Stephen J. Holtman, AT0003594
        Paul D. Gamez AT0002806
        Nicholas Petersen AT0012570
        115 Third Street SE, Suite 1200
        Cedar Rapids, IA 52401-1266
        Telephone: (319) 366-7641
        Facsimile: (319) 366-1917
        Email: sholtman@spmblaw.com
              pgamez@spmblaw.com
              npetersen@spmblaw.com

        ATTORNEYS FOR DEFENDANTS DENNIS HANSEN, LESLIE HANSEN, TYLER HANSEN, NOELLE HANSEN, BRADLEY NELSON, JORDAN NELSON, LINDSEY VALENTINI, NICHOLAS VALENTINI, AND MARK KRAMER

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 4, 2025, a copy of the foregoing document was filed with the Clerk of Court for the United States Court for the Southern District of Iowa using the CM/ECF system which will send notification of such filing to all attorneys and parties of record.

        /s/ Stephen J. Holtman