# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UBS FINANCIAL SERVICES INC., and ANDREW BURISH,<br><br>                Petitioners,<br><br>   v.<br><br>DENNIS HANSEN, LESLIE HANSEN, TYLER HANSEN, NOELLE HANSEN, BRADLEY NELSON, JORDAN NELSON, LINDSEY VALENTINI, NICHOLAS VALENTINI,<br>and MARK KRAMER,<br><br>                Respondents. | **Civil Action No. 4:25-cv-120-SMR-HCA**<br><br>**REPLY IN SUPPORT OF PETITIONERS' MOTION TO VACATE ARBITRATION AWARD**<br><br>**Oral Argument Requested** |

**Table Of Contents**

Introduction ........................................................................................................................... 1

Argument .............................................................................................................................. 1

    I.      UBS's and Burish's motion to vacate is properly before this Court ...................... 1

    II.     The Court should vacate the award because it is grossly excessive. ..................... 4

          A.     Courts have the power and obligation to vacate grossly excessive punitive awards. ........................................................................................... 4

          B.     The nearly $70 million punitive award imposed on UBS is grossly excessive. ................................................................................................... 7

    III.    The Court should vacate the award against UBS and Burish because it does not satisfy the threshold requirements of Iowa Code § 668A.1. .................. 10

    IV.    If the Court denies the motion to vacate, Claimants cannot recover attorney fees. ......................................................................................................... 11

Conclusion ........................................................................................................................... 12

**Table Of Authorities**

**Cases**

*Agostini v. Felton*,
    521 U.S. 203 (1997)..................................................................................................5

*Beumer Corp. v. ProEnergy Servs., LLC*,
    899 F.3d 564 (8th Cir. 2018) ....................................................................................5

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)...............................................................................................4, 8

*Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers*,
    739 F.3d 1136 (8th Cir. 2014) ...............................................................1, 2, 3, 5, 6

*Boerner v. Brown & Williamson Tobacco Co.*,
    394 F.3d 594 (8th Cir. 2005) ....................................................................................8

*Borntrager v. Cent. States Se. & Sw. Areas Pension Fund*,
    577 F.3d 913 (8th Cir. 2009) ....................................................................................2

*Bowen v. Amoco Pipeline Co.*,
    254 F.3d 925 (10th Cir. 2001) ..................................................................................6

*Brown v. Brown-Thill*,
    762 F.3d 814 (8th Cir. 2014) .....................................................................7, 10, 11

*Eagle Iron Works v. Int'l Ass'n of Machinists & Aerospace Workers*,
    2001 WL 1678741 (S.D. Iowa Nov. 26, 2001)......................................................12

*Entergy Operations, Inc. v. United Gov't Sec. Officers of Am. Int'l Union*,
    856 F.3d 561 (8th Cir. 2017) ................................................................................4, 5

*F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*,
    417 U.S. 116 (1974)................................................................................................11

*Fleck v. Wetch*,
    937 F.3d 1112 (8th Cir. 2019) ..................................................................................5

*Hall Street Associates v. Mattel, Inc.*,
    552 U.S. 576 (2008)..................................................................................................5

*Hallmark Cards, Inc. v. Monitor Clipper Partners*,
    758 F.3d 1051 (8th Cir. 2014) ..................................................................................7

*Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*,
    817 F.3d 857 (3d Cir. 2016).....................................................................................5

*Hintz v. JPMorgan Chase Bank, N.A.*,
    686 F.3d 505 (8th Cir. 2012) ....................................................................................2

*Honda Motor Co. v. Oberg*,
   512 U.S. 415 (1994) ...................................................................................................... 3

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers v. Gen. Pipe Covering, Inc.*,
   792 F.2d 96 (8th Cir. 1986) ......................................................................................... 12

*Jefferies, LLC v. Decker*,
   2024 WL 1874997 (9th Cir. Apr. 30, 2024) ................................................................. 5

*Kerr v. John Thomas Fin.*,
   2015 WL 4393191 (S.D.N.Y. July 16, 2015) ............................................................... 6

*Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*,
   103 F.3d 1422 (8th Cir. 1997) ..................................................................................... 11

*Medicine Shoppe International, Inc. v. Turner Investments, Inc.*,
   614 F.3d 485 (8th Cir. 2010) ..................................................................................... 2, 5

*Minneapolis Taxi Owners v. City of Minneapolis*,
   572 F.3d 502 (8th Cir. 2009) ......................................................................................... 3

*Munizzi v. UBS Fin. Servs. Inc.*,
   202 N.E.3d 358 (Ill. App. Ct. 2021) .......................................................................... 4, 6

*Rudwall v. UBS Financial Services Inc.*,
   No. 1:24-cv-7627 (N.D. Ill.) .......................................................................................... 2

*Sarofim v. Tr. Co. of the W.*,
   440 F.3d 213 (5th Cir. 2006) ......................................................................................... 6

*Sawtelle v. Waddell & Reed*,
   304 A.D.2d 103 (N.Y. App. Div. 2003) ....................................................................... 7

*Seldin v. Estate of Silverman*,
   939 N.W.2d 768 (Neb. 2020) ........................................................................................ 6

*Spaur v. Owens-Corning Fiberglas Corp.*,
   510 N.W.2d 854 (Iowa 1994) ..................................................................................... 10

*Stark v. Sandberg, Phoenix & von Gontard, P.C.*,
   381 F.3d 793 (8th Cir. 2004) ......................................................................................... 6

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................. 4, 8, 9

*Stevenson v. Union Pac.*,
   354 F.3d 739 (8th Cir. 2004) ....................................................................................... 12

*United States v. Castellanos*,
   608 F.3d 1010 (8th Cir. 2010) ....................................................................................... 2

*Volk v. X-Rite, Inc.*,
   599 F. Supp. 2d 1118 (S.D. Iowa 2009) ..................................................................... 12

*W.R. Grace & Co. v. Loc. Union 759*,
  461 U.S. 757 (1983) ........................................................................................................... 4

*Watkins v. Lundell*,
  169 F.3d 540 (8th Cir. 1999) ..................................................................................... 1, 3, 9

*Williams v. ConAgra Poultry Co.*,
  378 F.3d 790 (8th Cir. 2004) ............................................................................................. 8

*WM Crittenden Ops., LLC v. United Food & Com. Workers*,
  9 F.4th 732 (8th Cir. 2021) ................................................................................................ 2

*Yung v. Grant Thornton, LLP*,
  563 S.W.3d 22 (Ky. 2018) ................................................................................................. 8

*Zimmer Biomet Holdings, Inc. v. Insall*,
  108 F.4th 512 (7th Cir. 2024) ............................................................................................ 6

**Statutes**

9 U.S.C. § 6 ............................................................................................................................... 3

9 U.S.C. § 10(a)(4) .................................................................................................................... 5

ICA § 668A.1 .................................................................................................................... 10, 11

**Other Authorities**

2 Com. Arbitration § 92:17 ....................................................................................................... 3

Op. & Order, ECF 23, *Rudwall*, No. 1:24-cv-7627 (N.D. Ill. Jan. 30, 2025) ........................... 2

**Rules**

L.R. 7(b)(4) ............................................................................................................................... 3

FINRA Rule 12904(a) ............................................................................................................. 10

**Introduction**

The arbitration award at issue in this case granted nearly $70 million in punitive damages to a group of wealthy investors. The award is nearly seven times larger than any the Eighth Circuit or Iowa Supreme Court has ever condoned in a case involving purely economic harm. An award this extraordinary goes far beyond the run-of-the-mill awards that courts routinely enforce under the Federal Arbitration Act. This Court should vacate the award.

None of Claimants' arguments to the contrary permits a different outcome. For starters, UBS's and Burish's challenges are properly before this Court. They expressly objected to the imposition of a punitive award during the arbitration. And controlling precedent *requires* courts to vacate awards that violate public policy even where, unlike here, the movant did not preserve the challenge. *Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers*, 739 F.3d 1136, 1142 (8th Cir. 2014); *Watkins v. Lundell*, 169 F.3d 540, 545, 547 (8th Cir. 1999).

On the merits, Claimants fail to rebut UBS's showing that excessive punitive awards violate well-established federal and Iowa public policy. Nor do they meaningfully explain how the award in this case can possibly be reconciled with Supreme Court and Eighth Circuit caselaw— instead, they ask the Court to follow an outlier decision from the Kentucky Supreme Court. Claimants similarly fail to rebut UBS's and Burish's showing that the panel's award violates well-established Iowa policy in Iowa Code § 668A.1.

**Argument**

**I.    UBS's and Burish's motion to vacate is properly before this Court.**

Claimants' lead argument is that UBS and Burish failed to preserve their challenges to the nearly $70 million punitive award. That is incorrect, for three reasons.

*First*, UBS and Burish specifically objected to punitive damages during their closing argument. *See* 12/9/24 Hrg. Tr. at 104:4–11 ("With respect to punitive damages, we believe this case

1

doesn't even come close to the standards that are required for awarding punitive damages.") (filed under seal by flash drive, *see* Dkt. 22). And they objected again in post-hearing briefing. *See* Dkt. 1-13 at 47–48 ("Claimants' efforts to recover punitive damages are inappropriate for two independent, equally dispositive reasons."). To the extent UBS and Burish expanded upon their objections after the arbitration panel entered an excessive award, "[n]ot every new argument, or shift in approach, constitutes the raising of a new issue." *United States v. Castellanos*, 608 F.3d 1010, 1017 (8th Cir. 2010); *see also, e.g.*, *Borntrager v. Cent. States Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 923 (8th Cir. 2009). Moreover, Claimants themselves cited precedent governing the outer limits of a permissible punitive award, Dkt. 1-3 at 47 & n.15, as well as Iowa law requiring specific factual findings for a punitive award, *id.* at 41–42. For that independent reason, both issues were before the arbitration panel and are properly before this Court. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 508 (8th Cir. 2012) (no forfeiture where prevailing party raised affirmative defense "and its elements" in the district court).[1]

*Second*, the Eighth Circuit has specifically held that courts *must* review public-policy challenges to arbitral awards even if, unlike here, the challenge was *not* preserved during the arbitration. *Boehringer*, 739 F.3d at 1142 ("We do not agree with the Union and the district court that BIVI waived its right to challenge the award on public policy grounds by not raising this issue to the arbitrator."). "Once the public policy question is raised, [this Court] *must* answer it by taking the facts as found by the arbitrator." *WM Crittenden Ops., LLC v. United Food & Com. Workers*, 9 F.4th 732, 736 (8th Cir. 2021) (emphasis added, quotations omitted).[2]

---

[1] Claimants point out that in a different case, UBS argued that a movant forfeited his challenge to an arbitrator's decision. Opp. 6, 29 (citing UBS's brief in *Rudwall v. UBS Financial Services Inc.*, No. 1:24-cv-7627 (N.D. Ill.)). This is far from the gotcha Claimants think it is. There, unlike here, the movant did not dispute that he failed to raise the challenge during the arbitration, did not challenge the award on public-policy grounds, and did not challenge an excessive punitive award. *See* Op. & Order, ECF 23, *Rudwall*, No. 1:24-cv-7627 (N.D. Ill. Jan. 30, 2025).

[2] Nothing in *Medicine Shoppe International, Inc. v. Turner Investments, Inc.*, 614 F.3d 485, 489 (8th Cir. 2010), is to the contrary. There, the appellants forfeited a public-policy challenge *on appeal* by failing to raise the issue "in the

2

*Third*, for punitive awards, judicial review is necessary to guard against the "acute danger of arbitrary deprivation of property" posed by runaway punitive damages. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994); *see also Watkins*, 169 F.3d at 545 (review "only by the judge who entered the [punitive] judgment" did "not comport with the Supreme Court's pronouncements"). Thus, in the analogous context of a motion to reopen a judgment under Federal Rule of Civil Procedure 60(b)(6)—i.e., a request for unusual and extraordinary relief—the Eighth Circuit held in *Watkins* that "an award of excessive and unconstitutional punitive damages" presents "exceptional circumstances" requiring judicial review even where, unlike here, a litigant "deliberately decided not to defend the [underlying] action." 169 F.3d at 543, 545. The district court abused its discretion in "failing to exercise its power under Rule 60(b)(6) to set aside [a] default judgment and reduce [the excessive] punitive damages award." *Id.* at 547.

Claimants also assert that UBS and Burish forfeited their objections to the award by filing excerpts of the record rather than the entire record. Opp. 4 n.4. By hinting at the argument only in an underdeveloped footnote, Claimants themselves have forfeited any argument that the Court should deny relief on this basis. *Minneapolis Taxi Owners v. City of Minneapolis*, 572 F.3d 502, 506 n.2 (8th Cir. 2009). In any event, nothing requires a party to file the complete arbitration record when seeking vacatur under the FAA. Motions to vacate are treated just like any other motion. 9 U.S.C. § 6; *see also* 2 Com. Arbitration § 92:17 ("A request under the FAA to confirm, vacate, modify or correct an award is heard in the manner provided by law for the making and hearing of motions."). This Court's rules require a movant to include the evidence "upon which the moving party relies," which is exactly what UBS and Burish did here. L.R. 7(b)(4).[3]

---

district court." *Boehringer*, 739 F.3d at 1142. "[T]he sentence suggesting that a public policy objection *must* be raised to the arbitrator," relied on by Claimants here, "was dicta that oversimplified" prior Eighth Circuit precedent. *Id.*

[3] In arguing otherwise, Claimants cite to an Illinois case involving a motion to vacate under state law, where the state court's rules required "that the record on appeal 'include all the evidence pertinent to the issues on appeal,'" and where

3

**II.      The Court should vacate the award because it is grossly excessive.**

On the merits, Claimants insist that courts have no choice but to enforce excessive punitive awards imposed by arbitrators—in their view, not even the sky is a limit. That is not the law.

**A.      Courts have the power to vacate grossly excessive punitive awards.**

At the threshold, Claimants mischaracterize the issue in this case as whether the FINRA panel was authorized to award punitive damages *at all*, rather than whether the *size of the award* was grossly excessive and therefore contrary to the parties' agreements and public policy. For example, Claimants accuse UBS and Burish of "disagree[ing] with the panel's findings" about their underlying conduct, and insist that "[t]here is no public policy favoring . . . fraud[.]" Opp. 8.

None of that has anything to do with this Court's power and obligation to vacate an *excessive* punitive award. Even where a defendant's misconduct warrants punitive damages, excessive punitive awards are inherently contrary to public policy. They "constitut[e] an arbitrary deprivation of property," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003), and interfere with "state sovereignty and comity," *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996). Excessive awards also go beyond an arbitrator's power under FINRA's rules and UBS's agreements with Claimants because both incorporate "applicable law." UBS Br. 8.

Undeterred, Claimants insist that courts can *never* vacate arbitration awards on public-policy grounds, Opp. 9, disregarding clear Supreme Court and Eighth Circuit precedent to the contrary, s*ee, e.g.*, *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 766 (1983) (allowing vacatur when an award violates "well defined" and "dominant" public policy); *Entergy*

---

the movant argued that the award "was against the manifest weight of the evidence." *Munizzi v. UBS Fin. Servs. Inc.*, 202 N.E.3d 358, 363, 367 (Ill. App. Ct. 2021). That state-court rule obviously has no application here, where the action arises under the FAA, does not involve a manifest-weight issue, and where UBS and Burish followed the procedure outlined in the FAA and this Court's rules. Nor do Claimants explain why the Court would need "39 days of evidence and argument," Opp. 4, to resolve UBS's and Burish's motion. Moreover, Claimants themselves filed virtually the entire arbitration record (unnecessarily), mooting any potential issue concerning the record. *See* ECF 24.

4

*Operations, Inc. v. United Gov't Sec. Officers of Am. Int'l Union*, 856 F.3d 561, 564 (8th Cir. 2017). If an award violates public policy, courts "are *obliged* to refrain from enforcing the award." *Boehringer*, 739 F.3d at 1141–42 (quotations omitted, emphasis added).

The Supreme Court did not overturn the public-policy exception in *Hall Street Associates v. Mattel, Inc.*, 552 U.S. 576 (2008). There, the Supreme Court held that parties cannot expand the scope of the FAA's statutory grounds for vacatur by agreement. *Id.* at 579. The Eighth Circuit subsequently held that *Hall Street* forbids application of the "manifest disregard" standard as a basis for vacatur under the FAA. *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565–66 (8th Cir. 2018); *Med. Shoppe*, 614 F.3d at 489. *Hall Street* also recognized, however, that courts have developed forms of "shorthand" for interpreting and applying the FAA's enumerated statutory grounds for vacatur. 552 U.S. at 585. Here, the public-policy exception fits easily within 9 U.S.C. § 10(a)—arbitrators "exceed[] their powers," 9 U.S.C. § 10(a)(4), when they impose excessive punitive awards, because they lack power to violate well-established public policy.

Nothing in *Hall Street* is to the contrary. *Hall Street* "did not consider the public-policy exception to enforcement of an arbitration award," nor is it "clearly irreconcilable" with controlling precedent establishing the exception. *Jefferies, LLC v. Decker*, 2024 WL 1874997, at *2 n.2 (9th Cir. Apr. 30, 2024). Thus, lower courts remain bound by circuit precedent establishing the public-policy exception. *Fleck v. Wetch*, 937 F.3d 1112, 1115 (8th Cir. 2019) ("'[I]f a precedent of this Court has direct application in a case . . . , the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'") (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Indeed, the Eighth Circuit and other courts have continued to apply the public-policy exception after *Hall Street*. *See, e.g.*, *Entergy*, 856 F.3d at 564; *Boehringer*, 739 F.3d at 1141–42; *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United*

*Healthcare Workers E.*, 817 F.3d 857, 862 (3d Cir. 2016); *Zimmer Biomet Holdings, Inc. v. Insall*, 108 F.4th 512, 516–17 (7th Cir. 2024).[4]  This Court must do the same.

Claimants' argument that excessive punitive awards do not violate public policy is equally unconvincing.  Opp. 10–12.  Claimants rely heavily on *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793 (8th Cir. 2004).  But *Stark* applied the "manifest disregard" standard, which this Circuit no longer permits as an independent ground for vacatur, and did not address the public-policy exception at all (let alone in a case involving a punitive award many times higher than any the Eighth Circuit has ever condoned).  *Id.* at 802–03.

Claimants' various out-of-circuit cases take them no further.  In *Munizzi*, the Illinois Appellate Court applied state law in upholding an arbitration panel's punitive award against an objection that the award violated public policy "encouraging disclosure of information about the competence of securities professionals."  202 N.E.3d at 367–68.  The court did not address federal law requiring courts to vacate awards that violate public policy under the FAA.  Moreover, in *Munizzi* the question before the court was whether *any* punitive award would have been impermissible.  *See id.*  The Claimants' other cases similarly involved the question whether *any* punitive award would have been out of bounds.  *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 939–41 (10th Cir. 2001) (rejecting arguments that punitive award was in manifest disregard of Oklahoma law and that limited judicial review of that award violated the Due Process Clause); *Kerr v. John Thomas Fin.*, 2015 WL 4393191, at *7 (S.D.N.Y. July 16, 2015) (rejecting public-policy challenge to punitive award because the "panel's award of punitive damages was proper under the relevant law"); *Sarofim v. Tr. Co. of the W.*, 440 F.3d 213, 217–20 (5th Cir. 2006)

---

[4] The only authority Claimants cite to the contrary is the Supreme Court of Nebraska's decision in *Seldin v. Estate of Silverman*, 939 N.W.2d 768, 787 (Neb. 2020).  That decision is inconsistent with controlling authority in the Eighth Circuit, *e.g.*, *Boehringer*, 739 F.3d at 1141–42, so it offers no help to Claimants here.

6

(similar). Here, unlike in those cases, UBS challenges the *amount* of the punitive award as grossly excessive, not the panel's authority to award punitive damages in the first place.

Claimants also misunderstand the Due Process Clause's relevance to this case. *See* Opp. 11–12. UBS does not argue that the arbitral award violated the Due Process Clause, and therefore it is of no moment whether FINRA arbitrations constitute state action. Instead, the award exceeded the arbitrators' power under the FAA because: (1) grossly excessive punitive awards are contrary to well-established federal and Iowa policy; and (2) the parties' agreements and FINRA's rules incorporated the outer boundaries of state law into the arbitrators' power to impose an award. UBS Br. 8–10; *see Sawtelle v. Waddell & Reed*, 304 A.D.2d 103, 108–10 (N.Y. App. Div. 2003) (vacating punitive award because grossly excessive punitive awards are "equally arbitrary and irrational under the FAA"). Moreover, the arbitration panel expressly invoked Iowa law as the basis for the punitive award, so the limits on Iowa punitive awards necessarily constrained the panel's authority also. *See Brown v. Brown-Thill*, 762 F.3d 814, 824–25 (8th Cir. 2014).

**B.    The nearly $70 million punitive award imposed on UBS is grossly excessive.**

On the merits, each of *State Farm*'s guideposts makes clear that the punitive award here goes far beyond the outer limits of a permissible award. UBS Br. 11–17.

*Reprehensibility.* Claimants do not dispute that the alleged harm here was purely economic, they are not financially vulnerable, and UBS's and Burish's alleged misconduct "did not endanger anyone's physical health or safety." *Hallmark Cards, Inc. v. Monitor Clipper Partners*, 758 F.3d 1051, 1061 (8th Cir. 2014). Instead, Claimants list three pages of bullet points describing Burish's and alleged misconduct—all of which the Court can accept as true for purposes of this motion (though much of it is, in fact, false). Opp. 14–18. None of it changes the fact that this case involves purely economic harm to wealthy individuals, favoring a smaller award.

7

As for UBS's settlement with the SEC, Claimants seek to downplay their reliance on the SEC settlement, accusing UBS of falsely claiming that this was their "main argument." Opp. 18. Confusingly, however, they argue extensively in another section of their brief that UBS should be punished for violating the SEC order and that the magnitude of the punishment should be commensurate to what the SEC imposed. *Id.* at 21–22. To the extent they suggest that the SEC's sanctions "were ineffectual," Opp. 22 (quotations and emphasis omitted), they fail to acknowledge the critical point that Burish's alleged misconduct *predates* the SEC order by two years and that the alleged regulatory violations at issue in the SEC settlement overlap with that same time period, UBS Br. 13. Nor do they acknowledge controlling precedent holding that courts must "focus on the conduct related to the plaintiff's claim rather than the conduct of the defendant in general" to avoid a "duplicative punitive damages award." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004). And they ignore controlling precedent barring courts from imposing punitive damages premised on nationwide conduct. *E.g.*, *Gore*, 517 U.S. at 571–72, 585.

***Ratio.*** Claimants' arguments as to the permissible ratio similarly disregard controlling precedent. In *State Farm*, the U.S. Supreme Court held that where, as here, compensatory damages are "substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit." 538 U.S. at 425. Claimants ask the Court to follow the *Kentucky* Supreme Court's decision in *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22 (Ky. 2018), instead. That is an invitation to reversible error. *ConAgra*, 378 F.3d at 799 (reversing district court and reducing award to a 1:1 ratio based on "the standards laid down by the Supreme Court in *State Farm*"); *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602–03 (8th Cir. 2005) (similar).[5]

---

[5] Because *Yung* is inconsistent with U.S. Supreme Court and Eighth Circuit precedent, the Court can simply disregard it. The alleged misconduct in that case was also significantly more egregious than the conduct alleged here. There, the financial advisor withheld the fact that outside legal counsel, IRS notices, and professional articles all indicated that the advisor's recommendation would violate expected IRS regulatory changes. 563 S.W.3d at 43–44, 67.

8

Claimants make no serious effort to rebut the caselaw cited in UBS's opening brief showing that: (1) the Eighth Circuit has never allowed a punitive award exceeding a 1:1 ratio in a case with compensatory damages higher than $10 million; and (2) the punitive award is nearly seven times higher in sheer dollar terms than any ever affirmed by the Eighth Circuit or Iowa Supreme Court in a case involving economic harm. UBS Br. 14–15. Indeed, despite claiming that the massive award here falls "within the range of acceptable ratios," Opp. 20, Claimants are unable to identify a single analogous case in the Eighth Circuit or Iowa involving an award even approaching the size of the award here, let alone one near this size that exceeded a 1:1 ratio.

*Similar awards.* Other than their improper reliance on UBS's settlement with the SEC, *supra* at 8, Claimants make no effort to identify a comparable award under federal or Iowa law. Opp. 21–24. They fault UBS for identifying the most analogous penalty in Iowa, *id.* at 21 n.10, ignoring that the Eighth Circuit *itself* looked to the very same statute in an analogous case, UBS Br. 15 (citing *Watkins*, 169 F.3d at 546). Supreme Court precedent *requires* courts to consider "civil penalties authorized or imposed in comparable cases" as one of multiple factors in determining the outer limits of a permissible award. *State Farm*, 538 U.S. at 428 (quotations omitted). Claimants do not identify any other statutory penalty that the Court should use.

Finally, Claimants point to a $79 million award in another FINRA arbitration that was issued shortly *after* the award in this case. Opp. 23–24. As UBS has explained (and as Claimants do not dispute), that award, like this one, was dramatically higher than the norm in FINRA arbitrations. UBS Br. 16. Thus, it is more evidence of the need for courts to vacate grossly excessive punitive awards under the FAA, not that courts should surrender the field.

**III.    The Court should vacate the award against UBS and Burish because it does not satisfy the threshold requirements of Iowa Code § 668A.1.**

The award should be vacated for the additional reason that the panel failed to make the necessary factual findings under Section 668A.1. UBS Br. 17–20. In response, Claimants argue that Section 668A.1's text "does not extend to" arbitration. Opp. 24–25. That proves too much—if Section 668A.1 could not be applied in an arbitration, then the panel lacked authority to enter *any* punitive award under Section 668A.1, yet that is the statute that the panel cited. *See Brown*, 762 F.3d at 824–25 (arbitrator exceeded his powers by purporting to exercise an "exclusively judicial function"). Nor do Claimants explain why the policy reflected in Section 668A.1—that most of a punitive award should go to a public purpose unless the defendant's misconduct was directed specifically at the claimant—is inapplicable to punitive awards in an arbitration.

Next, Claimants say that the panel *did* make the factual findings required by Section 668A.1 because it awarded them punitive damages and cited Iowa law. Opp. 25–26, 28. But Section 668A.1 requires "findings *indicating*" that the threshold requirements for punitive damages (and for allocating the award) are satisfied. ICA § 668A.1(1) (emphasis added, comma omitted). The panel did not do so here. Nor does it make any difference that, as a general matter, neither the FAA nor FINRA's rules require arbitrators to provide reasoned decisions. Opp. 25–27. Having imposed an award under Section 668A.1, the panel's power was constrained by the threshold requirements of the statute. *Brown*, 762 F.3d at 824–25. Similarly, an award that gives 100% of the punitive award to Claimants without satisfying the statutory prerequisites violates Iowa public policy meant to "divert a portion of a resulting punitive damage award to a public purpose." *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 869 (Iowa 1994). And FINRA's rules themselves provide that "[a]ll awards shall be in writing and signed by a majority of the arbitrators or *as required by applicable law*." FINRA Rule 12904(a) (emphasis added).

Claimants' argument that FINRA's rules independently authorize punitive damages also misses the mark. Opp. 27. The panel here specifically invoked Iowa law as the basis for the punitive award, at Claimants' insistence. *See, e.g.*, Dkt. 1-8 at 94 (invoking Iowa law); Dkt. 1-3 at 41 (similar). The fact that the panel theoretically could have invoked a similar remedy under FINRA's rules therefore does not excuse the panel's failure to stay within the boundaries of Iowa law. *See Brown*, 762 F.3d at 824–25 (although arbitrator had authority to "tak[e] up the removal issue," he lacked authority to "base[] removal on grounds that are, by statute, *exclusively* judicial").

Finally, Claimants insist that UBS's and Burish's alleged misconduct was specifically directed at them, such that they should recover 100% of the award. Opp. 28. But that issue is not before the Court—it was the FINRA panel's obligation to determine whether the bulk of the punitive award should go to Iowa's civil-reparations trust fund. *See* ICA § 668A.1. Nor is it certain that the panel would have given all of the award to Claimants. Their main justification for a massive award was (and remains) alleged companywide violations of SEC rules that involved financial advisors and clients around the country, not Claimants specifically. *See* Opp. 21–22.

**IV.     If the Court denies the motion to vacate, Claimants cannot recover attorney fees.**

Claimants also argue that they are entitled to attorney fees. But under the American rule, parties are generally responsible for their own attorney fees absent a statutory or contractual fee-shifting provision, subject to very narrow exceptions that are inapplicable here. *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1434–35 & n.14 (8th Cir. 1997). As Claimants do not dispute, no applicable statute or contract provides for fee-shifting here. Without an applicable fee-shifting provision, a court cannot award attorney fees unless a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974).

11

The bad-faith exception requires extreme conduct that "practiced a fraud upon the court or defiled 'the temple of justice.'" *Stevenson v. Union Pac.*, 354 F.3d 739, 751 (8th Cir. 2004). The same high bar applies to motions to vacate arbitral awards. *Volk v. X-Rite, Inc.*, 599 F. Supp. 2d 1118, 1135 (S.D. Iowa 2009); *Eagle Iron Works v. Int'l Ass'n of Machinists & Aerospace Workers*, 2001 WL 1678741, at *1 (S.D. Iowa Nov. 26, 2001). Courts do not award fees where the "challenge of the award [was] justified," *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers v. Gen. Pipe Covering, Inc.*, 792 F.2d 96, 101–02 (8th Cir. 1986), or there were "reasonable grounds justifying [the movant's] refusal to comply" with the award, *Volk*, 599 F. Supp. 2d at 1135.

Claimants make no effort to show that the bad-faith exception is satisfied, save for another potshot framing UBS's forfeiture argument in an unrelated case as some sort of concession that UBS and Burish were foreclosed from moving to vacate here. Opp. 29. As explained above, the movant's forfeiture in that case bears no resemblance to the facts here. *Supra* at 2 n.1. At the very least, UBS's and Burish's challenges to the nearly $70 million punitive award here are based on "reasonable grounds" and are not in bad faith. *Volk*, 599 F. Supp. 2d at 1135. Claimants' drive-by argument to the contrary lacks merit.[6]

**Conclusion**

For these reasons, the Court should vacate the award and deny Claimants' motion to confirm the award. Claimants do not dispute that if the Court grants UBS's and Burish's motion, the proper remedy would be vacatur of the entire award. If the Court denies UBS's and Burish's motion and grants Claimants' motion, the Court should deny Claimants' request for attorney fees.

---

[6] The cases cited by Claimants are also plainly inapposite. All but one involved a party losing in arbitration, *ignoring* the arbitral award, and forcing the winning party to bring an action enforcing the award. Here, UBS and Burish promptly moved to vacate the award, and have provided ample support for their request that the Court grant that relief.

12

| | |
|---|---|
| Dated: June 25, 2025 | Respectfully submitted, |
| */s/    Tyler R. Smith*_____ | */s/ Matt Gregory*_____ |
| Thomas J. Joensen  AT0003868 | Thomas G. Hungar (*Pro hac vice*) |
| Tyler R. Smith  AT0013123 | Matt Gregory (*Pro hac vice*) |
| *Lead Counsel* | Emma Eisendrath (*Pro hac vice*) |
| GORDON REES LLP | Audrey Payne (*Pro hac vice*) |
| 666 Grand Avenue, Suite 1701 | GIBSON, DUNN & CRUTCHER LLP |
| Des Moines, IA 50309 | 1700 M Street, N.W., Washington, D.C. 20036 |
| (515) 204-2844 | (202) 955-8500 |
| trsmith@grsm.com | mgregory@gibsondunn.com |
| | |
| | Marshall R. King (*Pro hac vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 200 Park Avenue, New York, NY 10166 |
| | (212) 351-4000 |
| | mking@gibsondunn.com |

*Attorneys for Petitioners UBS Financial Services Inc. and Andrew Burish*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the June 25, 2025 by:

☐ U.S. Mail  ☐ FAX
☐ Hand Delivered  ☐ UPS
☐ Federal Express  ☒ Electronic Filing
☐ Email

/s/ *Peggy Rosky*

13