**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UBS FINANCIAL SERVICES INC. and ANDREW BURISH, | Case No. 4:25-cv-00120-SMR-HCA |
| Plaintiffs, | |
| v. | **APPEAL OF MAGISTRATE JUDGE'S ORDER DENYING MOTION TO UNSEAL [ECF 62]** |
| DENNIS HANSEN, LESLIE HANSEN, TYLER HANSEN, NOELLE HANSEN, BRADLEY NELSON, JORDAN NELSON, LINDSEY VALENTINI, NICHOLAS VALENTINI, and MARK KRAMER, | |
| Defendants. | |

Intervenors MGA Entertainment, Inc, Larian Living Trust DTD 11.12.98, Wozfam QOF, LLC, Wizardofoz QOF, LLC, MGAE Real Deal QOF, LLC, Jasmin Hekmat, Ryan Hekmat, Jason Larian and Angela Larian (collectively, "MGA"), pursuant to Local Rule 72A, appeal the Magistrate Judge's Order Denying Motion to Unseal (the "Order") dated February 13, 2026. ECF 62. The Court should reverse the Order's denial of MGA's motion to unseal and order that the Sealed Filings be unsealed entirely, or that the filings be unsealed after the parties apply appropriate redactions.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND.........................................1

LEGAL ARGUMENT......................................................................................................3

     I.     The Order States the Correct Test But Applies the Wrong One and
          Ignores UBS's Burden to Overcome the Presumption in Favor of
          Public Access. ..........................................................................................3

     II.    The Order Erred in Ruling that Documents Submitted in Support
          of a Motion to Confirm Arbitration Are Not Judicial Records.............5

     III.   The Order Commits Multiple Mistakes of Law in Balancing the
          Public's Right to Access the Sealed Filings Versus UBS's
          Confidentiality Concerns. ........................................................................8

     IV.   The Order Erred in Failing to Require Redaction Rather Than
          Unsealing. ...............................................................................................15

CONCLUSION..............................................................................................................17

## INTRODUCTION

UBS voluntarily filed a public complaint in federal court seeking to vacate a $92 million arbitration award against it. The Defendants in this case, the "Hansen Investors," who were the plaintiffs in the underlying arbitration, cross-petitioned to confirm the arbitration award. Both parties submitted records of the arbitration to the Court as the basis for their various arguments. UBS, though, seeks to prevent the public, including MGA, from accessing the arbitration transcripts and exhibits submitted as the Hansen Investors' Exhibits A and C (the "Sealed Filings"). A United States Magistrate Judge denied MGA's motion to unseal the Sealed Filings, but its Order reflects several material errors. ECF 62.

First, the Order flips the well-established two-step analysis of sealing disputes— establishing the materials are judicial records entitled to the presumption of access and the balance of interests—in such a way that UBS's affirmative burden to justify sealing was effectively eliminated. Second, the Order erroneously found, against the weight of authority, that the evidence that the parties filed in federal court seeking to confirm or vacate the arbitration award did not constitute judicial records. Third, the Order incorrectly ruled that UBS's vague confidentiality interests outweigh the public interest in meaningful access to a manifestly newsworthy case. And finally, the Order erred in holding that redaction could not substitute for complete denial of public access to the records. This Court should correct these errors and grant MGA's motion to unseal the Sealed Filings.

## SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2025, the "Hansen Investors" prevailed against UBS (their brokerage firm) and Andrew Burish (their financial advisor) on claims of breach of fiduciary duty, violation of FINRA suitability rules, failure to supervise/negligent supervision, and fraudulent non-

disclosure in an arbitration governed by FINRA.  ECF 1-14.  The FINRA panel awarded the

Hansen Investors over $92 million in compensatory and punitive damages—one of the largest

retail arbitration awards ever issued by a FINRA panel.  ECF 1-14, at 4-5.

UBS and Burish (collectively "UBS") moved to vacate the arbitration award and

submitted several exhibits from the underlying arbitration.  ECF 1 (and attachments).  The

Hansen Investors resisted the motion and offered their own exhibits, including the Sealed

Filings, *i.e.*, the arbitration transcripts and exhibits, ECF 27, Ex. A, Ex. C.  The Hansen Investors

moved to seal the Sealed Filings, and this Court granted that request in a text order.  ECF 21, 22.

UBS's motion to vacate remains pending.

The Hansen Investors are not the only victims of UBS's misconduct.  MGA is currently

engaged in a FINRA arbitration against UBS that involves the same claims, factual allegations,

and securities transactions at issue in the Hansen Arbitration.  ECF 38-2.  For example, MGA

asserts claims against UBS for breach of fiduciary duty, breach of the implied covenant of good

faith and fair dealing, failure to supervise, misrepresentation, and negligence, arising from short-

sale transactions in Tesla securities in 2020 that UBS's Private Wealth Management Group

placed on MGA's accounts.  *Id.*  Like the Hansen Investors' arbitration, the MGA arbitration

involves allegations that UBS's Private Wealth Management Group breached its duties regarding

investments in Tesla, UBS concealed key information regarding the accounts it managed, and

UBS failed to supervise its employees and ignored risks in the MGA accounts arising from the

short positions in Tesla and neglected opportunities to mitigate losses in the accounts until UBS

itself faced risk.  *Id.*  The MGA arbitration hearing is scheduled to begin on March 16, 2026.  *Id.*

In September 2025, MGA moved to intervene in this action and to unseal the Sealed

Filings.  ECF 37, 38.  UBS resisted, ECF 51, and the Hansen Investors submitted a reply,

ECF 54.  The Hansen Investors stated that they did not resist MGA's request to unseal the records so long as either (a) MGA gained access to the Sealed Filings subject to an existing confidentiality agreement, or (b) before the Sealed Filings were unsealed and publicly available, the Hansen Investors first had an opportunity to redact personal and private information. ECF 38-2, at 3.

This Court granted MGA's motion to intervene.  A United States Magistrate Judge held a hearing on the motion to unseal on November 20, 2025.

On February 13, 2026, the Magistrate Judge issued an Order Denying MGA's Motion to Unseal.  ECF 62 (the "Order").  This appeal followed.  For the reasons stated herein, this Court should overturn the Order and direct that the Sealed Filings be unsealed subject to UBS and the Hansen Investors first having an opportunity to redact any necessary information.

## LEGAL ARGUMENT

### I.    The Order States the Correct Test But Applies the Wrong One and Ignores UBS's Burden to Overcome the Presumption in Favor of Public Access.

The Order begins by announcing the applicable test, but it then deviates from that test and applies a novel approach unsupported by the law.

As the Order recognizes, the Eighth Circuit has adopted a two-part test to determine whether a party can overcome the common-law presumption in favor of the public's right to access judicial records.  "[A] court must first decide if the documents in question are judicial records."  Order at 4 (quoting *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018)).  If the documents are judicial records, then the common-law presumption of public access to judicial records applies.  *See* Order at 3-4.  At that point, the court "must next consider whether *the party seeking to prevent disclosure* has overcome the common-law right of access that would otherwise apply to such records."  *Flynt*, 885 F.3d at 511 (emphasis added); *see, e.g., Vanda*

*Pharms., Inc. v. FDA*, 539 F. Supp. 3d 44, 52 (D.D.C. 2021) (stating that the burden is on the party resisting unsealing "to demonstrate the *absence* of a need for public access" (emphasis in original)).

The Order, however, ignores this clear precedent, choosing to "analyze the issues in reverse." Order at 4. According to the Order, such an approach is permitted "because determining whether the arbitration documents are judicial records becomes less consequential if the parties' interests outweigh the public's interest." *Id.* In support of that proposition, the Order cites to *IDT Corp. v. eBay*, 709 F.3d 1220, 1222-24 (8th Cir. 2013), and states that *IDT Corp.* "analyz[ed] the competing interests *without determining* whether the [document at issue] was a judicial record." Order at 4 (emphasis added).

The Order's novel approach is legally erroneous. Contrary to the Order, the Eighth Circuit in *IDT Corp.* did not fail to decide whether the document at issue in that case was a judicial record. The court began its analysis by acknowledging that the parties "d[id] not dispute" that the document was a judicial record in light of the "modern trend in federal cases to treat pleadings in civil cases (other than discovery motions and accompanying exhibits) as presumptively public." *IDT Corp.*, 709 F.3d at 1222-23. The court, moreover, necessarily concluded that the document was, in fact, a judicial record, based on its conclusion to remand the case to the district court so that the district court could "assess whether redaction of confidential business information is practicable." *Id.* at 1225. If the document was not a judicial record, then that exercise would have been for naught.

By swapping the order of operations prescribed by the Eighth Circuit, the Order also ignores that it is UBS—as the party seeking to prevent disclosure—that bears the burden to overcome the presumption in favor of public access. It was UBS's obligation, therefore, to show

- 4 -

that its interests in confidentiality outweigh "the interests served by the common-law right of access." *IDT Corp.*, 709 F.3d at 1223. The Order makes no mention of the allocation of the burden of persuasion. And for the reasons that follow, UBS cannot satisfy its burden.

## II.    The Order Erred in Ruling that Documents Submitted in Support of a Motion to Confirm Arbitration Are Not Judicial Records.

The Order erred in finding that the arbitration documents submitted to the Court by the parties, including the Sealed Filings, are not judicial records. That conclusion is contrary to virtually every court to address the question, including the authorities that the Order itself relies upon.

The Order correctly states that the bulk of authority holds that documents submitted in support of a substantive motion are judicial records. *See* Order at 14-15. It follows that evidentiary materials submitted in support of a substantive motion, such as a petition to confirm or vacate an arbitration award, are virtually *per se* judicial documents. The Order itself collects many cases so holding, including in the arbitration context. *See id.* at 16-19. In particular, the Eighth Circuit's most instructive case, *IDT Corp.*, recognizes (albeit in *dicta*) that the "modern trend" is that all documents in civil litigation are judicial records "other than discovery motions and accompanying exhibits," 709 F.3d at 1223.

The only authorities cited in the Order to cabin this general principle are, in context, at least distinguishable, and in fact largely supportive of MGA's position. *See* Order at 16-17. So the Order, if affirmed, would be a true outlier, not just an order adopting the minority position on a split of authority.

First, in *Italgrani Elevator v. Int'l Longshoreman's Ass'n Local 1765*, No. 22-cv-1398, 2023 WL 346024 (E.D. Mo. Jan. 20, 2023), the movant sought to seal "two documents containing medical information about a non-party grievant" that was "highly confidential,"

*id.* at *1.  The court summarily granted the motion as limited to those two documents, but the order did not seal any of the *other* documents in support of the petition to confirm.  *See id.*

Second, in *CAA Sports v. Dogra*, No. 18-cv-1887, 2018 WL 6696622 (E.D. Mo. Dec. 20, 2018), the court ruled the exact opposite of the Order here, finding that all the disputed documents were not only judicial records, but judicial records that should be unsealed, *see id.* at *2.  The *CAA Sports* court did not approve the sealing of *any* documents; it only granted the party seeking sealing's request that the parties meet and confer in advance of any future sealing disputes.  *See id.*

Third, in *Cornet v. Twitter, Inc.*, No. 23-cv-441, 2025 WL 1158350 (D. Del. Apr. 18, 2025), the plaintiffs filed arbitration documents as allegedly persuasive authorities in opposition to a Rule 12(b)(6) motion to dismiss, not as evidence underlying a motion to confirm an arbitration award, *see id.* at *1.  That attempt to use materials outside the pleadings was obviously improper, and in a different context entirely to MGA's motion.  Indeed, the *Cornet* court recognized that if the arbitration documents *were* related to a pending motion, "the common law right of access would attach and compel" unsealing with redactions.  *Id.* at *2.  The court struck the improperly filed documents from the record entirely to prevent them from becoming judicial records.  *See id.* at *3.

In addition, the Order in concluding that the Sealed Filings were not judicial records, relied heavily on the "extremely limited" nature of review of arbitration awards.  Order at 20-22.  But that is the wrong question.  Instead, the test for a judicial record is whether a party has submitted it in support of an attempt to obtain judicial relief.  *See* ECF 38-1 at 5-6.  The arbitration documents clearly satisfy that test—limited review is still review.  The arbitration proceedings are reviewed for their procedural regularity, not directly for their substance, as the

Order explained.  *See* Order at 20-22.  But review for procedural regularity is still a meaningful form of judicial review, and it can even include an evaluation of the legal substance of the arbitrator's ruling.  *See, e.g.*, *Zeidman v. Lindell Mgmt. LLC*, 145 F.4th 820, 827 (8th Cir. 2025) (holding that an arbitrator "exceeded its authority" by "committ[ing] legal error" by considering "extrinsic evidence" in contract interpretation).

UBS's own filings demonstrate that the disputed documents are relevant to the pending motions.  The key issue UBS seeks review of, the propriety of punitive damages, turns on a multi-factor, totality-of-the-circumstances test that requires consideration of all the circumstances underlying the arbitration award.  *See* ECF 1-1 at 16, 18-20 & n.5.  Part of that inquiry requires a comparison between the facts of this case and the facts of comparable cases. *See id.*; *see also, e.g.*, ECF 34 at 6-7, 12, 14, 18 & n.8.  The Hansen Investors have argued in turn that the arbitration record demonstrates "multiple years of repeated breaches of fiduciary duties" that are reprehensible and justify punitive damages versus other similar cases.  *See, e.g.*, ECF 23 at 4, 8, 12-18, 21-24, 25-28.  This Court will evaluate the Sealed Filings to decide whether to vacate or confirm the arbitration award, which is why the parties have submitted the documents, and why the documents constitute judicial records.  The Order itself recognizes that the parties dispute "the relevancy of the entire 39-day proceedings."  Order at 16 n.2.

Finally, even if the Order was correct in part, it would be overbroad.  The Order relied on UBS's arguments that "personal and financial information" is not relevant, or that "not *all* of the documents are relevant to the motion to confirm."  *Id.* at 20.  But those arguments, even if true, could not support the Order's ruling that *none* of the submitted documents constitute judicial records.  Instead, they would support a holding that, while the bulk of the documents or

information constitute judicial records, a subset of those documents and information (such as personal and financial information) do not.

The practical consequences of a finding that documents submitted in supporting or attacking arbitration verdicts are not judicial records would be significant. As the Order recognizes, there is no right of public access to non-judicial documents at all. *See* Order at 14. So if the Order is correct, there would be no way for the public to access the documents that the parties voluntarily submitted to a public tribunal, even if (hypothetically) the public interest heavily weighed in favor of disclosure. But when parties "call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. of Cal. v. Leavall*, 220 F.3d 562, 568 (7th Cir. 2000) (Easterbrook, J.). "Judges . . . issue public decisions after public arguments based on public records," and "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat." *Id.* This Court should rule that the Sealed Filings are judicial records.

## III. The Order Commits Multiple Mistakes of Law in Balancing the Public's Right to Access the Sealed Filings Versus UBS's Confidentiality Concerns.

"[O]nly the most compelling reasons" can overcome the presumption of public access and "justify non-disclosure of judicial records." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005)). But the Order rules that the Sealed Filings should remain sealed based on UBS's vague and conclusory claims of confidentiality. At the same time, the Order incorrectly minimizes the public's interest in this proceeding. This Court should correct those mistakes of law and conclude that the public's interest in the Sealed Filings outweighs UBS's unclear confidentiality concerns.

Start with the Order's reliance on conclusory, undefined concerns that the Sealed Filings contain sensitive information. The Order, quoting from filings from UBS and the Hansen Investors, says that the Sealed Filings contain the following types of sensitive information: "personal and financial data," "financial account information," "personal financial information of [the Hansens]," "proprietary business records, and other private information." Order at 12-13. Exactly what this information entails is unclear; equally unclear is just how much of this information is contained in the Sealed Filings or the harm that UBS and/or the Hansen Investors would suffer if the information was disclosed.

That so little is known about the purportedly confidential information in the Sealed Filings demonstrates that the materials should not be sealed (at least not in their entirety). *See, e.g.*, *IDT Corp.*, 709 F.3d at 1224-25 (remanding because it was unclear why "the *entire* document should remain under seal"); *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 4 (D.D.C. 2016) (stating that a failure to "explain[] what material" is private "undermines [a] claim to prejudice"); *Steele v. City of Burlington*, 334 F. Supp. 3d 972, 984–85 (S.D. Iowa 2018) ("Defendants can propose redactions to sensitive identifying information before any unsealing occurs. Defendants' countervailing reasons for nondisclosure carry little weight.").

True, there is "a general privacy interest in financial documents." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 6:15-cv-1698, 2021 WL 117527, at *2 (M.D. Fla. Jan. 4, 2021); *see also IDT Corp.*, 709 F.3d at 1223-24 (recognizing that "confidential and competitively sensitive information" could support redacting or sealing). But "that interest does not singlehandedly overcome the public's right to access without a showing harm will result from the financial documents' disclosure." *Johnson*, 2021 WL 117527, at *2. "The party opposing disclosure must make a particular and specific demonstration of fact showing that

disclosure would result in an injury sufficiently serious to warrant protection." *Id.*; *IDT Corp.*, 709 F.2d at 1224-25; *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 307-08 (6th Cir. 2016) ("In delineating the injury to be prevented, specificity is essential.").

Like the Order, however, UBS has provided nothing more than vague assertions that the Sealed Filings contain "internal regulatory and compliance policies and procedures." ECF 51, at 13-15. Neither UBS nor the Order has provided citations for where the so-called sensitive information appears in the Sealed Filings, and UBS never explained why the disclosure of such information constitutes a grave risk of "serious injury" for UBS. *Id.* These failures alone are sufficient grounds to grant MGA's motion to unseal, and the Order ignored them entirely—indeed, the Order made the same mistakes UBS did in its briefing.

The Order's reference to arbitral confidentiality does not save the day. MGA agrees with the Order that the general interest in the confidential nature of arbitration, standing alone, is not sufficient for UBS to overcome the presumption of public access to the Sealed Filings. Order 11-12.

But for several reasons, the Order gives too much weight to the confidential nature of arbitration. For one thing, again, UBS initiated this lawsuit. *See* Section II *supra*. For another, courts have determined that such a confidentiality interest is not enough to outweigh the presumption where, as here, the party seeking to bar disclosure has "barely tried to show" that the sealed material was, in fact, confidential. *Grynberg*, 205 F. Supp. 3d at 3-4; *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168-49 (S.D.N.Y. 2018). Finally, the Order's reliance on *In re IBM Arb. Agreement Litig.*, 76 F.4th 74 (2d Cir. 2023) is misplaced. *Id.* (calling the case "particularly persuasive"). Unlike MGA, the plaintiffs in *IBM* had been a party to the underlying arbitration. The plaintiffs "initially sued [in court] to invalidate the Confidentiality Provision."

- 10 -

*In re IBM Arb. Agreement*, 76 F.4th at 86. Then, when the plaintiffs did not get their way, the plaintiffs moved to unseal documents they had previously filed under seal. The Second Circuit held that the plaintiffs "may not end-run the Confidentiality Provision by filing protected materials and then invoking the presumption of access to judicial documents." *Id. IBM* is plainly not the situation here, and the same goes for *Stafford v. IBM*, 78 F.4th 62 (2d Cir. 2023), the other case to which the Order cites in relation to arbitral confidentiality and which also involved a party to the underlying arbitration trying to "to launder the[] confidentiality [of sealed materials] through litigation." *Stafford*, 78 F.4th at 71; Order at 12

Not only did the Order give too much weight to UBS's conclusory confidentiality concerns; it then tilted the scale even further by minimizing the public's interest in this proceeding. The Order, essentially, concluded that the public's interest in the Sealed Filings was nonexistent because "[t]he Court's role in adjudicating the motion to vacate and the motion to confirm is limited" and the public could "understand and monitor" the Court without "scour[ing] every detail of the 39-day arbitration." Order at 6, 22. Based on that, the Order said that the public's interest in and the presumption of access to the Sealed Filings "is low." Order at 8-9.

But UBS and the Hansen Investors' statements undercut the Order's view of this Court's role in this proceeding and the public's ability to comprehend this Court's forthcoming ruling without reference to the Sealed Filings.

UBS claims that the arbitrator's punitive damages award was excessive. UBS's punitive damages challenge differentiates this case from those cited in the Order for the proposition that review of a motion to vacate is limited. Order at 6, 20-22 (citing several cases, none of which involved a challenge to an arbitrator's punitive damages award).

Both the Hansen Investors and UBS agree that the Sealed Filings may be and are, in fact, relevant to the punitive damages question.  *See* Section II *supra*.  For their part, the Hansen Investors succinctly contend that "the complete record of [the arbitration proceedings] that UBS failed to submit fully justifies the arbitration panel's 3-to-1 ratio of punitive damages against UBS."  ECF 54, at 1-2 (citing the Sealed Filings).

UBS similarly acknowledges that the Sealed Filings contain information helpful to one's understanding of the arbitration and this Court's forthcoming decision concerning punitive damages.  UBS states that "[w]hether a punitive award is grossly excessive" includes "the degree of reprehensibility of the alleged misconduct" and "the difference between the punitive award and the civil penalties authorized or imposed in comparable cases."  ECF 1-1, at 16 (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).  "In assessing reprehensibility, the Court considers (1) whether the harm to the claimant was physical or economic; (2) whether the defendant evinced an indifference to or reckless disregard of the health or safety of others; (3) whether the victim was financially vulnerable; (4) whether the conduct was repeated or isolated; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident."  ECF 1-1, at 16.  "[P]recedent *requires* courts to consider 'civil penalties authorized or imposed in *comparable* cases' as one of multiple factors in determining the outer limits of a permissible award."  ECF 34, at 6.

The Sealed Filings contain evidence that is relevant to those factors.  For example, UBS and the Hansen Investors direct this Court to other analogous cases and ask this Court to compare the facts of their arbitration (as evidenced in the Sealed Filings) with those other cases.  ECF 1-1, at 18-20 & n.5 (citing and quoting cases and arguing that the facts in this case "are easily distinguishable"); ECF 23, at 13-14, 21-24; ECF 34, at 13 n.5 ("The alleged misconduct in

that case was also significantly more egregious than the conduct alleged here."). Indeed, the briefing indicates that the dispute over punitive damages necessarily involves this Court assessing all parts of the arbitration record, including the Sealed Filings. ECF 1-1, at 16-18; ECF 23, at 4, 8, 12-18 (criticizing UBS's reading of the arbitration record and characterizing the record as showing "multiple years of repeated breaches of fiduciary duties"); ECF 23, at 25-28 (alleging that UBS's misconduct was directed at the claimants); ECF 34, at 6-7, 12-13 (under the heading "Reprehensibility," UBS states "Claimants list three pages of bullet points describing Burish's [] alleged misconduct—all of which the Court can accept as true for purposes of this motion (though much of it is, in fact, false). None of it changes the fact that this case involves purely economic harm to wealthy individuals, favoring a smaller award.").

Although the Order failed to consider the "value" of the Sealed Filings to "those monitoring federal courts," UBS's own admissions demonstrate that such "value" is substantial. *IDT Corp.*, 709 F.3d at 1224. Per UBS, "[c]ourts play a vital role in policing the[] lines" between punitive damages awards that vindicate the public and those that exceed constitutional limits. ECF 1-1, at 14, 21 n.6; ECF 34, at 9. UBS claims that the arbitration award at issue in this case is "more evidence of the need for courts to vacate grossly excessive punitive awards under the FAA, not that courts should surrender the field," ECF 34, at 14, and that such awards demonstrate "a growing risk of runaway punitive awards in FINRA arbitration if courts do not enforce the fundamental principles of public policy reflect in the well-recognized limits applicable to punitive awards." ECF 1-1, at 21 n.6. As UBS admits, punitive damages "'are aimed at deterrence and retribution' *on behalf of the public*," and that "Iowa statutory law reflects that same principle." ECF 1-1, at 11, 13 (emphasis added) (UBS contending that the

Hansen Investors had "failed to show the requisite harm to the public" or "sufficient wrongdoing in UBS's supervision of Burish").

The Order failed to address UBS's admissions. The Order did not consider that this proceeding, which concerns the largest FINRA award against one of the largest banks in the United States, is itself an issue of public importance. *See, e.g.*, *Datamaxx Applied Techs., Inc. v. Chubb Custom Ins. Co.*, No. 6:20-cv-291, 2020 WL 6049318, at *7 (M.D. Fla. Sept. 11, 2020) (considering as relevant in denying request to seal the fact that "federal commercial litigation concerning insurance contracts is a matter of public concern"); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) ("[C]ommon sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know."). Nor did the Order acknowledge the press coverage of this case. *See, e.g.*, Joyce Hanson, *Toy Company Eyes UBS Records Amid FINRA Arbitration*, Law360 (Sept. 22, 2025), https://perma.cc/YAJ4-SPWB; Clark Kauffman, *Lawsuit Challenges Iowans' $95 Million Award Over Tesla Investment*, Iowa Capital Dispatch (Apr. 1, 2025), https://bit.ly/4hAWHvw; Jennifer Lea Reed, *UBS Asks Court to Partially Vacate $95.3M FINRA Panel Award*, FA-mag.com (Apr. 2, 2025), https://bit.ly/4nxE90u.

In short, this case relates to allegations that UBS lied, deleted relevant evidence, and failed to supervise its financial advisors, even after it had received a $125 million punishment from the Securities & Exchange Commission for engaging in similar conduct. UBS, in its filings, says that most of those allegations are "false." ECF 34, at 6-7, 12-13. This Court should not allow UBS to contest the very basis for the punitive damages award at issue in this case by keeping the Sealed Filings from public view. Rather, because the public's interest in the Sealed

Filings is great, UBS's vague claims of confidentiality are not sufficient to overcome the presumption in favor of public access.[1]

## IV.    The Order Erred in Failing to Require Redaction Rather Than Unsealing.

Even if some part of a document can permissibly be sealed, it is often impermissible for an "*entire* document [to] remain under seal." *IDT Corp.*, 709 F.3d at 1224. The Order appears to conclude that redaction is insufficient because "line-by-line redaction is impossible," *id.*, but that conclusion is erroneous in at least four respects.

First, UBS bears the burden of persuasion to show that the sealing of the entirety of the disputed documents is appropriate. *See Flynt*, 885 F.3d at 511. But the Order does not reference or apply that burden, and if anything, instead appears to implicitly require that *MGA* prove that redaction is feasible. *See* Order at 13.

Second, UBS has not made any showing that redaction would be infeasible. Its brief devoted one paragraph to the question and does not even provide the Court with citations to where the allegedly problematic information appears in the Sealed Filings, excepting a limited number of documents apparently containing personal information. *See* ECF 51, at 13-15, 19. To state the obvious, a conclusory statement in a brief that redaction is infeasible is not evidence and is entitled to no weight in the Court's decision, especially when the Hansen Investors state that redaction is feasible. ECF 38-2, at 3; *see, e.g., Davita Healthcare Partners, Inc. v. United States*,

---

[1]    MGA does not contest the Order's ruling that MGA's private interest in obtaining the Sealed Filings for use in an arbitration is "detached from the purpose of common-law access." Order at 7-8. Generally speaking, a party's "reasons" or "motive" is "irrelevant to defining the weight accorded the presumption of access." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). That is even more true now that it is unlikely MGA will be able to obtain the Sealed Filings prior to its March 16, 2026, arbitration. But, to be clear, MGA, like all members of the public, have a strong interest in this case in ensuring that one of the largest financial institutions in this country is held to account.

131 Fed. Cl. 42, 44 (Fed. Cl. 2017) (holding that "considerations of timing and costs are outweighed" by the presumption in favor of public access).

Third, the feasibility of redaction depends heavily on the nature of the information that UBS seeks to protect, but UBS, despite bearing the burden, has identified that information only vaguely. It refers to categories such as "commercially sensitive material," "internal regulatory and compliance policies," and "proprietary business records." ECF 51, at 13-15. These categories describe documents routinely disclosed to the public in complex litigation. Indeed, virtually all document discovery in commercial litigation could be described as "commercially sensitive" or "proprietary." *Id.* UBS's vagueness alone is reason to grant the motion to unseal. *See Grynberg*, 205 F. Supp. at 4 (explaining that a failure to "explain[] what material" is private "undermines [a] claim to prejudice"); *United States v. Pickard*, 733 F.3d 1297, 1304-05 (10th Cir. 2013) (same). While some personal information may truly justify sealing, the necessity of some redaction of "sensitive identifying information" does not provide a "compelling reason" to justify sealing, and instead carries "little weight." *Steele*, 334 F. Supp. 3d at 984–85.

Finally, the Order claims that the sealed materials comprise only "a minor portion" of the evidence, and that the "sealed exhibits are the exception, not the rule." Order at 10, 13. If true, that fact would weigh *in favor* of redacting versus sealing. But the assertion is simply inaccurate. Of the exhibits UBS and the Hansen Investors submitted in relation to the pending motions, only about 1,350 pages are unsealed, whereas, according to the Order, "nearly 10,000 pages" remain sealed. *Id.* The practical result of the Order is to eliminate the public's access to the basis for a highly newsworthy case, after UBS itself sought the federal courts' intervention.

At minimum, redaction of the Sealed Filings should be required; they should not be sealed in their entirety.

## CONCLUSION

The Court should reverse the Order Denying Motion to Unseal and grant MGA's motion to unseal.

Dated: February 18, 2026

**MICHELMAN & ROBINSON, LLP**

By: */s/ Kevin S. Kim*
     Kevin S. Kim (*pro hac vice*)      SBN 275200
     17901 Von Karman Ave, Suite 1000
     Irvine, CA 92614
     Telephone: (714) 557-7990
     Email:  kkim@mrllp.com

**WEINHARDT & LANTZ, P.C.**

By: */s/ Kyle J. Essley*
     Kyle J. Essley                      AT0015054
     William C. Admussen                 AT0016195
     2600 Grand Avenue, Suite 450
     Des Moines, IA  50312
     Telephone: (515) 244-3100
     E-mail:  kessley@weinhardtlantz.com
               wadmussen@weinhardtlantz.com

ATTORNEYS FOR INTERVENORS
MGA ENTERTAINMENT, INC.; LARIAN LIVING TRUST DTD 11.12.98; WOZFAM QOF, LLC; WIZARDOFOZ QOF, LLC; MGAE REAL DEAL QOF, LLC; JASMIN HEKMAT; RYAN HEKMAT; JASON LARIAN; and ANGELA LARIAN.

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on February 18, 2026 via CM/ECF.

     Signature:              /s/ Maura McNally-Cavanagh